### In re E.F. HUTTON SOUTHWEST PROPERTIES II, LTD., Debtor.

**Bankruptcy No. 388–35397–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 17, 1989.

---

Jack Balzersen, Rochelle & Balzersen, Dallas, Tex., for E.F. Hutton Southwest Properties II, Ltd., debtor.

Robert E. Goodman, Jr., Nancy Atlas Friedman, Sheinfeld, Maley & Kay, Dallas, Tex., for Limited Partners Committee.

Morris D. Weiss, Weil, Gotshal & Manges, Houston, Tex., for Hutton Real Estate Services II, Inc.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON,
Bankruptcy Judge.

This case involves the developing issue of what causes of action a trustee, debtor in possession or committee may assert on behalf of the bankruptcy estate. The official limited partners' committee ("Committee") filed a Motion for Authority to Prosecute Action on Behalf of the Debtor's Estate ("Motion"). The motion requests authority to bring an action against certain entities and individuals, require the Debtor to segregate $125,000 in unencumbered funds as a source to pay professional fees incurred in the action, and approve Sheinfeld, Maley & Kay ("SMK") as counsel to prosecute the action. Hutton Real Estate Services II Inc. ("HRES II"), general partner for the Debtor, as well as a proposed defendant, responded that the claims and allegations outlined in the exhibit to the motion contain both derivative and individual causes of action. HRES II also stated that it was unclear whether SMK could simultaneously prosecute both individual and derivative actions. Finally, HRES II opposed the set aside of unencumbered funds to pursue derivative litigation. The Debtor responded as well, opposing the segregation of

funds. Debtor suggests that the funds should be used to pay administrative expenses and unsecured claims in a future plan of reorganization. Following a preliminary hearing on the motion, the court fashioned a procedure requesting that the committee submit a draft complaint to better define the matters discussed, and a memorandum of law concerning state law problems. The court further requested HRES II and the Debtor to file appropriate responsive pleadings. Finally, the court ordered the Debtor to set aside $62,500 as a potential fund to pay for litigation the court deemed appropriate. The parties graciously agreed to the procedure. The court conducted a follow up status conference.

## I.

E.F. Hutton Southwest Properties II, LTD. ("Debtor") is a Delaware limited partnership. The Debtor was formed in March 1984 to acquire, own and operate five apartment complexes in Texas. HRES II is currently the sole general partner of the debtor. Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on September 2, 1988. The committee was appointed to represent the interests of approximately 339 limited partners. Each limited partnership unit represents a $60,000 investment in the Debtor. On April 11, 1989, the committee formally demanded that the Debtor commence an action on its behalf against its general partner, other entities affiliated with HRES II, former general partners and other entities involved with the creation of the partnership and the transactions whereby the five apartment complexes were ac-

quired. The committee concurrently filed its motion April 11, 1989. The debtor refused to pursue the action [1].

## II.

Before moving to our discussion of what actions the committee will be authorized to pursue, prudential considerations must be recognized. Our discussion and analysis should be considered only in the context of administration of the estate and not as advisory rulings on the relative merits of the underlying actions. A finding that a proposed action may be asserted by the committee does not restrict any defendant's ability to attack the eventual action in any manner, including argument that the committee is not the proper proponent in the eventual action. However, to ensure that we properly analyze the issues, we nevertheless touch upon issues that would ordinarily be addressed in a true case or controversy [2].

## A.

As a starting point, the court must determine which of the Committee's proposed claims constitute property of the estate and which do not. It is axiomatic that actions that do not belong to the estate cannot be pursued by the committee. This determination constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) (Supp. IV 1986), and 11 U.S.C. § 541 (1982).

To evaluate the nineteen separate claims in the committee's draft complaint, the Court will formulate a framework for determining which actions belong to the estate. The reason for the framework stems

---

**1.** This case also graphically illustrates the problems associated with debtor counsel's having a close relationship with the general partner and its affiliates. The situation is analogous with *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D.Tex.1986) and *In re Kendavis Industries Int'l., Inc.*, 91 B.R. 742 (Bankr. N.D.Tex. 1988). *See also In re Lee*, 94 B.R. 172 (Bankr.C. D.Cal.1989). The general partner usually engages the counsel for the limited partnership debtor, pays the retainer, either from funds of the limited partnership or from its own sources, and guarantees fees in the case. The situation is sometimes the same in corporate cases. It is then quite difficult, if not impossible, for coun-

sel for the Debtor in Possession to sue the general partner or affiliate. The insider person's control skews counsel's independent judgment and allegiance, eliminating counsel's duty and ability to serve a single master.

**2.** HRES II challenges the ripeness of the committee's position and implicitly objects to this court's evaluating the fitness of the issues for judicial determination. (April 27, 1989 transcript p. 22, lines 13–23). Our role is to focus the committee in its efforts and ensure that the estate's resources are used efficiently.

from the committee's position that all of the claims belong to the estate. The committee position rests upon a liberal reading of *S.I. Acquisition* and a desire to extend its reach to individual actions. The committee suggests that it should be allowed to assert what appear to be individual claims of the limited partners because each suffered the same harm as a group, whether it be securities fraud or RICO. HRES II responds that such a suggestion would result in duplicative litigation and be potentially inconsistent with a direct class action suit by the limited partners. HRES II also suggests that the committee approach would eliminate the economic incentive to ·assert meritorious claims.

### B.

■■■ We begin with bankruptcy law's fundamental concept, property of the estate. The filing of a petition in bankruptcy creates a legal estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (1982). The concept is broad in scope. *United States v. Whiting Pools*, 462 U.S. 198, 205–06, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983). Property of the estate includes choses in action[3]. Whether an action belongs to the estate depends on how the action is characterized under applicable state (or federal) law. If an action under a particular theory belongs to the corporation or partnership under state law, then the action is "property of the estate." *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.*, 817 F.2d 1142, 1151 (5th Cir.1987); *Pierson & Gaylen v. Creel & Atwood (Matter of Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1253–54 (5th Cir.1986) and *American National Bank v. MortgageAmerica Corp.*, 714 F.2d 1266, 1276–77 (5th Cir.1983).

Two Fifth Circuit panels analyzing the scope of the automatic stay to actions against non-debtor entities have discussed whether an action belongs, under Texas law, to the bankruptcy estate. *MortgageAmerica*, 714 F.2d at 1276–77 and *S.I. Acquisition*, 817 F.2d at 1149. These decisions rest on the proposition that "a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor." *S.I. Acquisition*, 817 F.2d at 1150.

In *S.I. Acquisition* Judge Hill reasoned that Texas alter ego theory as set forth in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1986) provided the corporation [Debtor] a cause of action:

> The remedy of alter ego under Texas law appears to be available to all creditors of the corporation so long as the requisite melding of the corporation and its control entity are established ...
>
> Of most importance to our decision, however, is whether a corporation could assert an action against itself based upon alter ego.... Since the corporation has an independent existence at law, we do not believe it is inconsistent in light of the above policy to say that a corporation may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations.

*S.I. Acquisition*, 817 F.2d at 1152 (citations omitted). The Court concludes that "nothing in Texas law prohibits a corporation from asserting on its own behalf an action based on alter ego" and that Eastway was stayed from pursuing the estate's action "only for its benefit, and without giving notice to other creditors of S.I.A." To justify the stay, the Court noted that permitting the action to proceed would abridge the bankruptcy policy of equal distribution. *Id.* at 1153–54.

---

**3.** *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir.), *cert. denied sub nom., Jacoway v. Anderson*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987); *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253–54 (5th Cir.1986) (if shareholders' derivative action belongs to corporation under Texas law, then action becomes property of the estate once

bankruptcy petition is filed); *American National Bank v. MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984) (shareholder's derivative suit for breach of officers' and directors' fiduciary duties passes to the bankruptcy estate).

In *MortgageAmerica* Judge Randall [King] suggests that "common sense" requires one to look to whether the action is property of the estate under applicable state law. She concludes:

> ... a cause of action under Texas corporate trust fund doctrine (denuding) theory, even though is usually brought by creditors, is an action in the right of the corporation, and which is brought for the benefit of all creditors and shareholders with an interest in the corporation. As such, the action is a "right of action" belonging to the corporation within the meaning of section 70(a)(5) of the old Bankruptcy Act, and thus also within the meaning of section 541(a)(1) of the Code.

*MortgageAmerica,* 714 F.2d at 1277.

Following the Fifth Circuit analysis, the starting point must be how the action is characterized under state law. If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate. Although this statement is fundamental, the analysis has been muddled by the closely related issue of standing.

### C.

The courts have considered challenges to a creditor's standing to assert derivative type claims and alter ego claims, as well as challenges by creditors asserting that claims are individual[4]. An appreciation of the distinction between whether the action is property of the estate and the party who has standing to urge the same, has been muddled in the process.

As discussed above, Fifth Circuit decisions start with the proposition that if the particular action is property of the estate the automatic stay is in effect. The next step in the analysis is the recognition that the trustee or debtor in possession has standing to assert actions that belong to the estate. Likewise, in bankruptcy, the

trustee must act under his statutory duty to collect property of the estate and either pursue or abandon such actions. The Bankruptcy Code empowers the trustee to perform these duties because his actions are designed to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution. However, the trustee lacks standing to bring personal claims of creditors. *See Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434, 92 S.Ct. 1678, 1688, 32 L.Ed.2d 195 (1972) and *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1348 (7th Cir.1987). The simple reason is that personal claims are not property of the estate.

■ In *Koch Refining* the Seventh Circuit explains that "[S]tate law governs the cause of actions that can be asserted by a bankruptcy trustee and by creditors;" however, "the trustee has no standing to bring *personal* claims of creditors." *Koch Refining,* 831 F.2d at 1348 (emphasis original). The test for determining whether a cause of action belongs to the estate requires the court to "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors." *Koch Refining,* 831 F.2d at 1349.

Looking to the nature of the injury is consistent with traditional notions of standing. However, a bare bones statement that an injury is "peculiar and personal" rather than "common" to the corporation is conclusory. The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the corporation or individual. For example, the Supreme Court focused on the particular harm suffered in *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Although *Pepper v. Litton* primarily concerned equitable subordination,

---

**4.** *See Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233 (5th Cir.1988), *reh'g denied,* 864 F.2d 1147 (5th Cir.1989); *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275 (5th Cir.1988); *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1348 (7th Cir.1987); *Delgado Oil Co., Inc. v. Torres,* 785 F.2d 857, 861 (10th Cir.1986); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988); *Dana Molded Products, Inc. v. Brodner,* 58 B.R. 576 (N.D.Ill.1986).

its discussion of a trustee's standing to pursue a derivative type action remains pertinent today. Mr. Justice Douglas analyzed the result as follows:

> A director is a fiduciary. So is a dominant or controlling stockholder or group of stockholders. Their powers are powers in trust. Their dealings with the corporation are subject to rigorous scrutiny ... While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation enforceable by the trustee. For that standard of fiduciary obligation is designed for the common community of interests in the corporation—creditors as well as stockholders.

*Pepper v. Litton*, 308 U.S. at 306–07, 60 S.Ct. at 245. (citations and footnotes omitted).

Mr. Justice Douglas' recognition that the trustee could enforce an action for the "community of interests" was premised on the notion that applicable state law imposed a fiduciary duty on directors and controlling stockholders for the benefit of all creditors and stockholders[5]. The breach of duty caused direct harm to the corporation, and indirect harm to creditors and shareholders.

Following the preceding discussion, the court will determine whether an action is property of the estate using the state characterization analysis and the injury characterization analysis together.

### III.

In the present case, the committee has requested the debtor in possession to pursue certain causes of action. The debtor in possession refused to pursue the actions due to a conflict of interest, as well as a challenge that certain of the proposed actions did not belong to the bankruptcy estate. Accordingly, the committee sought authority to pursue the causes of action on behalf of the bankruptcy estate. The motion for authority to prosecute tracks the framework set forth in *Louisiana World*

*Exposition, Inc. v. Federal Insurance Co. (L.W.E.)*, 832 F.2d 1391 (5th Cir.1987):

> The circumstances in which a creditors' committee may sue on behalf of the trustee or debtor-in-possession are not spelled out in the Bankruptcy Code. However, the bankruptcy courts generally require that the claim be colorable, that the debtor-in-possession have refused unjustifiably to pursue the claim, and that the committee first receive leave to sue from the bankruptcy court.

*Id.* at 1397. Following the *L.W.E.* framework and our preceding discussion, we turn to the committee's proposed actions and decide which are property of the estate/colorable from an administrative perspective for purposes of allowing the committee leave to proceed on behalf of the estate.

### A.

■ Type I constitute "CLAIMS ARISING FROM HARM TO THE PARTNERSHIP." The particular claims under this category include:

1) Breaches of Fiduciary Duty Owed to the Partnership in the Management of the Partnership (¶¶ 66–86)

2) Common Law Fraud, Securities Fraud, and Statutory Real Estate Fraud Upon the Partnership (¶¶ 87–99)

3) Partnership Claims of Breaches of Contract and Warranties (¶¶ 100–113)

4) Partnership Claim of Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (¶¶ 114–124)

5) Civil Conspiracy (¶¶ 125–131)

6) Partnership Claim of Violations of the Deceptive Trade Practices—Consumer Protection Act ("DTPA") (¶¶ 132–141)

7) Breach of Duty of Good Faith and Fair Dealing Owed to the Partnership (¶¶ 142–146)

Neither HRES II nor the Debtor dispute that claims one through seven are derivative and belong to the estate. Moreover, the parties agree that Type I claims allege injury to the limited partnership. Applying the framework discussed above, the court

---

5. *Pepper v. Litton*, 308 U.S. at 307 n. 17, 60 S.Ct. at 245 n. 17.

agrees that claims one through seven belong to the estate under applicable state (or federal) law. The court further finds that the debtor has unjustifiably refused to prosecute these actions based upon a conflict of interest.[6] Accordingly, the court will authorize the committee to pursue claims one through seven, on behalf of the estate.

### B.

■ Type II constitute "CLAIMS OF LIMITED PARTNERS AGAINST THE DEBTOR PARTNERSHIP FOR WHICH OTHER DEFENDANTS ARE LIABLE BECAUSE OF THEIR RELATIONSHIP TO THE DEBTOR." The particular claims under this category include:

8) Breaches of Fiduciary Duty Owed to the Limited Partners (¶¶ 147–164)

9) Limited Partners' Securities, Common Law Fraud and Texas Real Estate Fraud Claims (¶¶ 165–185)

10) Limited Partners' Claims of Breaches of Contract and Warranties (¶¶ 186–198)

11) Limited Partners' RICO Claim (¶¶ 199–216)

12) Limited Partners' Claim of Civil Conspiracy (¶¶ 217–232)

13) Breach of Duty of Good Faith and Fair Dealing Owed to Limited Partners (¶¶ 233–246)

Type III constitute "CLAIMS BY LIMITED PARTNERS DIRECTLY AGAINST NON–DEBTOR DEFENDANTS." The particular claims under this category include:

14) Breaches of Fiduciary Duty Owed to the Limited Partners (¶¶ 247–264)

15) Securities, Common Law and Texas Real Estate Fraud Claims of Limited Partners (¶¶ 265–283)

16) Limited Partners' Claims of Breaches of Contract and Warranties (¶¶ 284–296)

17) Limited Partners' RICO Claim Against Non–Debtors (¶¶ 297–315)

18) Limited Partners' Civil Conspiracy Claim Against Non–Debtors (¶¶ 316–330)

19) Breach of Duty of Good Faith and Fair Dealing Owed to Partnership (¶¶ 331–344)

The committee argues that Type II and Type III claims should be treated as property of the estate[7]. The committee relies on *S.I. Acquisition* for the proposition that individual claims against the debtor sought to be enforced against a third party that is related to the debtor are property of the estate. The court agrees that one could read *S.I. Acquisition* for this proposition. However, the court reads *S.I. Acquisition* restrictively for the proposition that the automatic stay applies to prevent independent parties from pursuing actions against third parties which would impede or compete with the trustee's potential estate actions based on alter ego theories. This reading gives the trustee the first opportunity to pursue estate actions without interference from others. In this context the trustee may only bring actions that belong to the estate rather than individual actions. Likewise, independent parties suffer little harm because the trustee is duty bound to make a decision on administering the actions within a reasonable time under the circumstances. If the trustee or debtor in possession fails to take prompt action, individual creditors may petition the court to compel the trustee to bring suit or abandon

---

6. *L.W.E.*, 858 F.2d 233 (5th Cir.1988), *reh'g denied*, 864 F.2d 1147 (5th Cir.1989) (a debtor's refusal unjustified if the refusal stems from an obvious conflict of interest).

7. The draft complaint contains identical allegations that:

These claims of the Limited Partners against Defendants arising from their relationships with the Partnership constitute property of the Estate under 11 U.S.C. § 541. Such claims must be asserted by the Plaintiff Estate against the Defendants, which are responsible for these liabilities of the Debtor.

Enabling the Plaintiff Estate to enforce these claims will ensure an equitable distribution of the Estate's assets, insofar as third parties related to the prepetition Debtor are responsible to the Limited Partners.

Draft complaint paragraphs 161–62, 183–84, 194–95, 212–13, 228–29, 242–43, 261–62, 281–82, 294–95, 311–12, 326–27, and 340–41.

the claim. Additionally, individual creditors are free to petition the bankruptcy court to modify the automatic stay to allow their actions to proceed.[8] Finally, a creditor's committee or other similar committee can request that they be allowed to pursue the action on behalf of the estate.

The committee reading transforms a creditor's individual claim into a claim that belongs to the estate. Rather than attempting to separate claims that belong to the estate and claims that belong to an individual creditor, the committee has prepared an artfully drafted complaint that lumps all claims together. The fact that individual parties are stayed from pursuing certain individual actions does not allow one to reach the committee's conclusion that the action must therefore belong to the estate. The court discerns three distinct actions following our reading of *S.I. Acquisition* and *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972):

1. Purely estate actions which the trustee may pursue;

2. Actions by individual parties that interfere with potential estate actions which the trustee may not pursue; and

3. Purely individual actions that do not interfere with estate actions.

The committee approach is a misguided metamorphosis in conflict with *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

In *Caplin* Mr. Justice Marshall rejected the trustee's argument that he should have standing to sue an indenture trustee on behalf of debenture holders. The Court provides three reasons in rejecting the trustee's arguments that he was in a better position to prosecute individual claims than individual investors and that granting him standing to sue on behalf of the debenture holders would not encourage litigation. The court will focus on the first and third reasons.

The first reason for rejection concerns an observation that the "elaborate system" Congress established for indenture trustees contained no suggestion that "the

trustee in reorganization is to assume responsibility of suing third parties on behalf of debenture holders. The language, in fact, indicates that Congress had no such intent in mind." *Id.* at 428, 92 S.Ct. at 1685. Mr. Justice Marshall concludes the opinion with an invitation to Congress to change the result and grant the trustee exclusive authority to bring such action as a class action on behalf of all debenture holders. *Id.* at 434, 92 S.Ct. at 1688. Congress declined Mr. Justice Marshall's invitation. Neither the current Bankruptcy Code nor Bankruptcy Rules of Procedure confer standing upon the trustee to assert individual actions.

The third reason for rejection notes that a suit by the trustee "on behalf of debenture holders may be inconsistent with any independent actions they might bring themselves." *Id.* at 431–32, 92 S.Ct. at 1687. Mr. Justice Marshall explains the prohibition in view of the fact that:

... independent actions are still likely because it is extremely doubtful that the trustee and all debenture holders would agree on the amount of damages to seek, or even on the theory on which to sue. Moreover, if the indenture trustee wins the suit brought by the trustee in reorganization, unless the debenture holders are bound by that victory, the proliferation of litigation that petitioner seeks to avoid would then ensue. Finally, a question would arise as to who was bound by any settlement.

*Id.* at 432, 92 S.Ct. at 1687. (footnotes omitted).

The same concerns persist in the present case. Like the debenture holders in *Caplin*, the limited partners have independent causes of actions. Rather than allowing the limited partners, the persons truly affected by the alleged misconduct, to make their own assessment of the respective advantages and disadvantages of the litigation, the committee is attempting to substitute its assessment. The committee emphasizes that "any recovery from the successful litigation of the action will flow

8. *Gibraltar Savings v. LD Brinkman Corp.*, 860    F.2d 1275, 1285 (5th Cir.1988).

directly to the estate." Although the committee's proposal is attractive it lacks merit. The fact that the money flows to the estate rather than to the individual partners allegedly injured does not overcome the problem that the parties would not be bound by the litigation. Moreover, the court has serious doubts that a legal basis would permit such action.

With the categories and distinctions set forth above, the court finds that the Type II and Type III actions do not constitute property of the estate. Under applicable laws, the claims belong to the individual limited partners. Each claim asserts that the limited partners suffered injuries. These injuries are particular and peculiar to the limited partners. We cannot discern injury to the limited partnership from the allegations. The fact that other persons might be liable because of their relationship with the debtor is irrelevant. Following our discussion above, some of the Type II and Type III actions are individual actions that could interfere with the Type I and alter ego actions which do seek to recover on behalf of the estate. These actions are shielded by the automatic stay. The trustee does not have standing to pursue such actions. The trustee simply has the first opportunity to pursue actions that belong to the estate. Based on this discussion, the Debtor in Possession's refusal to prosecute Type II and Type III was not unjustified. Accordingly, the committee is not authorized to pursue the Type II and Type III claims on behalf of the estate.

## IV.

The committee's request that the debtor segregate funds will be considered at the confirmation hearings. The employment of SMK, committee counsel, will be extended to include authority to prosecute Type I actions on behalf of the estate. The debtor and general partner's request for appointment of an examiner will be considered if, as and when the committee commences litigation of the Type I claims on behalf of the estate. SMK is directed to prepare an order reflecting the discussion in this Memorandum Opinion.