In re: Nelson Bunker **HUNT** and Caroline Lewis Hunt, Debtors.

In re: William Herbert **HUNT** and Nancy Jane Broaddus Hunt, Debtors,

R. Carter **PATE,** as Independent Trustee of the Nelson Bunker Hunt Liquidating Trust; and Steven S. Turoff, as Independent Trustee of the William Herbert Hunt Liquidating Trust, Plaintiffs,

v.

Houston Bunker **HUNT,** et al., Defendants.

Bankruptcy Nos. 388–35726–HCA– 11, 388–35791–HCA–11. Adv. Nos. 391–3331, 391–3332.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 29, 1992.

Vernon O. Teofan, Jenkens & Gilchrist, P.C., Dallas, TX, for defendants.

Jordan Green, Lewis & Roca, Phoenix, AZ, Robert M. Cohan, Cohan, Simpson, Cowlishaw, Aranza & Wulff, L.L.P., Dallas, TX, for plaintiffs.

## REVISED MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came on for consideration on this 24th day of September, 1992, various defendants' motions to dismiss claims under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), asserted against them in the above-styled adversary proceeding. Motions to dismiss the RICO claims were filed by three sets of movants: the trustees of three Lyda Hunt–Bunker Trusts, collectively referred to as "the 3 LHB Trusts";[1] the trustees of a fourth Lyda Hunt–Bunker Trust, referred to as "the Mary Moreland Trust";[2] and Houston Bunker Hunt and Thomas J. Curnes. A Motion to Dismiss and Motion for Partial Summary Judgment Dismissing RICO Claims was filed on behalf of certain other defendants, collective-

---

**1.** The 3 LHB Trust defendants include Paul Hope, C.H. Mercer, and F. Charles Vickers as trustees of the Lyda Hunt–Bunker Trust–Ellen Finley Hunt, the Lyda Hunt–Bunker Trust–Elizabeth Bunker Hunt, and the Lyda Hunt–Bunker Trust–Houston Bunker Hunt.

**2.** The Mary Moreland Trust defendants include Mary Hunt Huddleston, Robert Grammer, and Jerry M. Coleman as trustees of the Lyda Hunt–Bunker Trust–Mary Moreland Hunt.

ly referred to as "the Miscellaneous Defendants."[3] A Motion for Summary Judgment on RICO Claims was filed by another set of trustees for various trusts.[4]

This Court has jurisdiction over the subject matter of these motions under 28 U.S.C. § 1334. This adversary proceeding appears to be a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H). To the extent that the RICO matter is not a core proceeding, this opinion shall be treated as recommendations to the District Court for the disposition of the RICO claims and shall be certified and rendered to the District Court for its able consideration.

The Court, after reviewing the exhaustive briefs submitted by the various parties and hearing oral argument, concludes that the Independent Trustees lack standing to pursue the claims they assert under RICO. Accordingly, this Court lacks jurisdiction over the subject matter of the RICO action, and the RICO claims should be dismissed. Because this finding is fatal to the plaintiffs' RICO cause of action, the Court declines to make further rulings on the sufficiency of their RICO claims.

The findings and conclusions herein are limited only to RICO matters and are not binding upon the court for the continued disposition of this case.

FINDINGS AND CONCLUSIONS

I. Historical and Procedural Background

In December 1989, this Court confirmed plans of reorganization in the respective Chapter 11 cases of William Herbert Hunt and wife ("Herbert Hunt") and Nelson Bunker Hunt and wife ("Bunker Hunt"). By separate orders of this Court entered in January 1990, Steven S. Turoff and R. Carter Pate were appointed Independent Trustees of the William Herbert Hunt Liquidating Trust and the Nelson Bunker Hunt Liquidating Trust, respectively, pursuant to the terms of the separate plans. · The two Independent Trustees filed an adversary complaint on June 11, 1991, seeking the recovery of alleged prepetition preferences and fraudulent conveyances from various defendants alleged to be insiders and relatives of the debtors.

More than a year later, on June 26, 1992, this Court granted the Independent Trustees' motion to add claims under RICO and name certain new defendants in connection therewith. At the hearing on the motion to amend, the Court declined to consider the issue of the plaintiffs' standing to assert their RICO claims, expressly deferring such matters for consideration in the context of motions to dismiss or for summary judgment. The pleadings were to remain sealed pending disposition of the standing issue.

II. The RICO Claims

The Independent Trustees allege that, by 1987, bankruptcy was inevitable for the Hunts due to massive lawsuits, tax fiascos, and declines in the petroleum and real estate markets. Plaintiffs' First Amended Complaint ¶ 85. The plaintiffs further allege that, while the debtors' financial condition deteriorated throughout the 1980s and realizing that bankruptcy was imminent,

---

**3.** The Miscellaneous Defendants include Walter Roach, John Rebensdorf, and Gage A. Pritchard, Sr., as trustees of the Lyda Hunt–Herbert Trusts; David Shelton Hunt as trustee of (i) the Taylor Flynn Hunt Trust A, (ii) the Casey Herbert Hunt Trust A, (iii) the Austin Douglas Hunt Trust A, (iv) the David Patrick Hunt Trust A, (v) the Megan Kimberly Hunt Trust A, (vi) the Marshall Thomas Hunt Trust A, and (vii) the Carter William Hunt Trust A; Bruce William Hunt as trustee of (i) the Robert Nathaniel Crow Trust A, (ii) the Margaret Doggett Crow Trust A, (iii) the Herbert Hunt Allred Trust A, (iv) the

Nancy Lois Allred Trust A, and (v) the Daniel Howard Crow Trust A; Douglas Herbert Hunt; Margaret Flynn Hunt; David Shelton Hunt; Bruce William Hunt; Leeanne Hunt; HPI Management Company; Pacwes Ltd.; Palomar Partners, Ltd.; Pentad Resources, Inc.; Penvest Corporation; Penyen Partners, Ltd.; Pegasus Partners, Ltd.; Alfred L. Allred; Lyda Bunker Hunt Allred; Trammell S. Crow; and Barbara Hunt Crow.

**4.** These defendants include C.H. Mercer, Charles Vickers, Paul Hope, and their respective wives.

the Hunts and the RICO defendants "succeeded in disposing of over $100,000,000 in assets that would otherwise have been available to pay the lawful claims of their creditors." *Id.* at ¶ 86. These allegations form the basis of the plaintiffs' original fraudulent-conveyance and insider-preference avoidance actions.

The complaint as most recently amended asserts violations of RICO due to the defendants' purported participation in the fraudulent conveyances. Specifically, the RICO defendants have been accused of violating 18 U.S.C. § 1962(c) and (d) by engaging in a series of transactions designed to defeat the bankruptcy laws by defrauding the Hunts' present and future creditors of approximately $130 million. *Id.* at ¶¶ 128, 131.

█ A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[5] The plaintiff must allege each of these elements to state a claim. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Section 1962(d) encompasses RICO conspiracies: "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of [§ 1962]." For purposes of the present case, "racketeering" is defined as "any offense involving fraud connected with a case under title 11." 18 U.S.C. § 1961(1)(D).

Section 1964(c) authorizes a private right of action by "[a]ny person injured in his business or property by reason of a violation of section 1962." This section authorizes recovery of treble damages, costs, and attorney's fees.

### III. The Standing Issue

All but one of the moving RICO defendants have raised an objection to the Independent Trustees' standing to maintain a RICO action.[6] Moreover, "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.' " *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990).

### A. Jurisdictional Implications of the Standing Inquiry

█ Standing goes to the "case or controversy" limitation on federal court jurisdiction, *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 218 (5th Cir.1989), and a plaintiff's lack of standing "robs the court of jurisdiction to hear the case," *McNair v. United States Postal Service*, 768 F.2d 730, 737 (5th Cir.1985) (per curiam), quoted in *Barrett*, 884 F.2d at 219. Therefore, a finding that the Independent Trustees lack standing to bring the RICO claims in question requires this Court's dismissal of those claims under Fed.R.Civ.P. 12(b)(1).

Salient issues of fact regarding the standing issue are not in dispute. Therefore, Rule 12(b)(1) dismissal based on the pleadings alone is appropriate as a matter of law. *See Barrett*, 884 F.2d at 219

---

**5.** 18 U.S.C. § 1962:

  (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. * * *

  (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

  (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**6.** The Mary Moreland Trust defendants did not raise an issue of standing in their motion to dismiss.

(where the merits of the claims asserted are not intertwined with the standing issue, challenges to standing may properly be disposed of on the pleadings).

## B. The Independent Trustees' Standing to Pursue Claims and Causes of Action

Under the terms of the Herbert Hunt plan of reorganization, the William Herbert Hunt Liquidating Trust received "all real and personal property of the Debtors' estates, pursuant to § 541 of the Bankruptcy Code, other than the Retained Assets...."[7] The estate retained various choses in action through the Independent Trustee:

> All rights and causes of action pursuant to (i) §§ 502, 542, 544, 545, 546, 550, and 553 of the Bankruptcy Code;[8] (ii) preference claims pursuant to § 547 of the Bankruptcy Code; (iii) fraudulent transfer claims pursuant to § 548 of the Bankruptcy Code; (iv) claims relating to postpetition transactions pursuant to § 549 of the Bankruptcy Code; (v) all claims and causes of action held against third parties as of the Confirmation Date, are hereby preserved for the benefit of the Debtors' estate, except as otherwise provided in Article V, Section 5.2(f) and Article IV, Section 4.6(a). The Independent Trustee shall have the right to bring such claims or causes of action on behalf of the Debtors' estate, subject to Bankruptcy Court approval.

Joint Plan of Reorganization of Herbert Hunt § 15.9. The plan of reorganization in Bunker Hunt's case contains similar, though not identical, language. Any net proceeds of the recited causes of action were to be distributed to creditors.[9]

The Independent Trustees assert that they meet the standing requirements of RICO because the Hunts' estates have been "injured in [their] business or property by reason of a violation of section 1962." Plaintiffs' First Amended Complaint ¶¶ 195, 200. The plaintiffs point to the fact that the estate has been deprived of the property allegedly transferred by the Hunts to the RICO defendants, saying that the deprivation "was to the detriment of all the Hunt Brothers' creditors." *Id.* They argue that they have standing under the Bankruptcy Code primarily because "section 541 includes causes of action, including RICO claims, when they are common to all creditors." Plaintiffs' Consolidated Response Re Standing Issues 10.

The defendants have raised myriad challenges to the plaintiffs' RICO claims, ranging from technical objections to the plaintiffs' case statement to arcane discussions of RICO "enterprise" theory. Most relevant to the dispositive issue here, however, are the defendants' dual attacks on the Independent Trustees' standing to pursue the RICO actions: (1) plaintiffs cannot maintain their RICO action because it is not specifically authorized by the Bankruptcy Code; and (2) the RICO claims do not belong to the estate because the debtors, who were participants in the alleged fraud, could not have brought the action against the RICO defendants.

### 1. Limits of the Trustees' Authority to Assert Claims

■ The RICO defendants correctly state that "[a] bankruptcy trustee derives

---

**7.** The term "Retained Assets" refers to certain defined interests in real and personal property which were retained by the debtors.

**8.** The cited sections of the Bankruptcy Code pertain to the following matters:
§ 502: objections to creditor claims;
§ 542: actions for turnover of estate property;
§ 544: strong-arm powers of hypothetical judgment lienholder;
§ 545: avoidance of statutory liens;
§ 546: limitations on trustee's avoidance powers;

§ 550: liability of transferee of avoided transfer; and
§ 553: avoidance of preferential exercise of setoff rights.

**9.** The Joint Plan of Reorganization of Herbert Hunt, ¶ 15.9, provides that "[a]ny proceeds generated from the prosecution or settlement of such claims or causes of action shall be added to the Trust Assets for distribution to Creditor Claims, after deduction of reasonable fees and expenses associated with the prosecution and settlement of such claims or causes of action."

the right to assert the claims of the debtor from [11 U.S.C.] Section 541, which defines and creates the bankruptcy estate." Miscellaneous Defendants' Memorandum of Law in Support of Motion to Dismiss and Motion for Partial Summary Judgment Dismissing RICO Claims 5. Nothing in the language of the Hunts' plans of reorganization purports to give greater litigation prerogatives to the Independent Trustees than the Bankruptcy Code bestows on trustees in general. To the contrary, § 15.9 of the Herbert Hunt plan is largely a neat paraphrase of the Code's scattered grants of power to the trustee to pursue certain of the estate's claims against third parties, including the debtor. Compare 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the *estate*") with Joint Plan of Reorganization of Herbert Hunt § 15.9 ("The Independent Trustee shall have the right to bring such claims or causes of action *on behalf of the Debtors' estate*") (emphases added).

█ In sum, the Bankruptcy Code grants trustees the authority to pursue only specific kinds of actions; those causes of action are derived exclusively from the trustee's capacity as a representative of the estate; and the plans of reorganization do not enlarge that authority for the Independent Trustees. Therefore, the Independent Trustees only have standing to pursue claims for recovery of damages that belong to the bankruptcy estate under § 541, in addition to those enumerated in §§ 544, 547, and 548.[10] The property of the estate, for purposes of the present controversy, is limited to that described in subsections (a)(1) and (a)(3) of § 541.

### 2. Property of the Estate Under § 541(a)(1)

█ Like all voluntary bankruptcy petitions, the Hunts' Chapter 11 filings trig-

gered the creation of estates under 11 U.S.C. §§ 541(a) and 301. Each estate is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).[11] The broad provision of § 541(a)(1) does include choses in action and claims by the debtor against others, but it is not intended to expand the debtor's rights against others beyond those that existed at the commencement of the case. 4 COLLIER ON BANKRUPTCY ¶ 541.01, 541–46 (1992), citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The bankruptcy estate succeeds only to the same rights the debtor had on the date the case was commenced, plus recoveries from specific avoidance actions (under § 541(a)(3), discussed below). Under § 541(a)(1), then, the Independent Trustees may pursue their RICO claims against the defendants—the Hunts' alleged co-conspirators—only to the extent that the Hunts themselves could have done so at the time they filed their bankruptcy petitions.

A co-conspirator in a fraudulent act, such as the RICO bankruptcy fraud alleged here, "cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent representations, and such reliance is an essential element in a case of fraud." *Cenco Incorporated v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). In *Cenco*, a corporation and its auditors had been engaged in fraud—with a twist: "Those involved in the fraud were not stealing from the company, as in the usual corporate fraud case, but were instead aggrandizing the company (and themselves) at the expense of outsiders...." 686 F.2d at 451. When the corporation and its auditors were named as codefendants in

---

**10.** Other administrative actions involve §§ 502, 542, and 545.

**11.** This definition encompasses the "legal or equitable" interest that the debtor presumptively retains (and hence surrenders to the estate) in

property he has fraudulently transferred. *See American National Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir.1983).

a class action,[12] the corporation filed a crossclaim against its auditors for intentional and negligent torts, i.e., participating in the fraud, failing to discover their own fraud, and failing to discover the fraud of the corporation's own management. Because of the unclean hands of the corporate officers and directors, the Court of Appeals for the Seventh Circuit refused to recognize the corporation's right of action against the auditors for fraud. Similarly, in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court determined that a trustee in bankruptcy could not maintain an action against a third party that could not have been maintained by the debtor. Justice Marshall, writing for the majority, drew an important distinction between suits brought on behalf of the estate and suits brought on behalf of third parties:

> The only support petitioner finds in the relevant statute is in that portion of 11 U.S.C. § 587 [under the old Bankruptcy Act] which gives reorganization trustees the additional rights that a "receiver in equity would have if appointed by a court of the United States for the property of the debtor." Petitioner relies on *McCandless v. Furlaud*, 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935), to support the proposition that a receiver in equity may sue third parties on behalf of bondholders. But ... the receiver in that case was suing on behalf of the corporation, not third parties; he was simply stating the same claim that the corporation could have made had it brought suit prior to entering receivership.

*Caplin*, 406 U.S. at 429, 92 S.Ct. at 1685. This Court has followed the *Caplin* distinction between debtor and nondebtor claims in *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 811 (Bankr.N.D.Tex. 1989) (Abramson, B.J.) ("If an action under a particular theory belongs to the [debtor]

under [applicable state or federal] law, then the action is 'property of the estate.'") (citing *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.*, 817 F.2d 1142, 1151 (5th Cir.1987)).

The Independent Trustees' First Amended Complaint and RICO Case Statement specifically allege that the debtors participated in the acts giving rise to the RICO claims.[13] Since they were conspirators in the purported fraud prohibited by RICO, the debtors, on the date of their bankruptcy filings, would have been unable to sue the present RICO defendants (their co-conspirators) for the fraud in question. *Cenco*, 686 F.2d at 454; *Lopez v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581, 588 n. 4 (N.D.Cal.1984) ("To allow one racketeer to sue another under RICO does not further the statute's objective of eradicating organized crime.").

The foregoing analysis does not preclude a trustee's maintenance of a RICO action against third parties on behalf of an estate where the debtor, prior to filing his bankruptcy petition, could have maintained the same action—where, for example, the debtor did not participate in the fraudulent acts. *See Ocean Energy II, Inc. v. Alexander & Alexander*, 868 F.2d 740, 746 (5th Cir.1989) (if "[t]he actual [RICO] damage ... is property of the bankrupt estate, ... only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate"); *cf. Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) ("rights of action against officers ... for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of the bankruptcy petition").[14]

---

12. The causes of action against Cenco and its auditors were brought by a class of shareholders who had purchased Cenco's stock at artificially inflated prices due to the defendants' continued fraud.

13. *See, e.g.,* Plaintiffs' First Amended Complaint ¶¶ 133, 134 (naming Herbert Hunt and Bunker Hunt as members of the "Hunt Enterprise"); RICO Case Statement ¶ 6(a) (same).

14. Plaintiffs cite *Koch* for the proposition that "allegations that could be asserted by any credi-

### 3. Property of the Estate Under § 541(a)(3)

■ Property of the estate includes, in addition to claims assertable by the prepetition debtor, "[a]ny interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title." [15] 11 U.S.C. § 541(a)(3). Section 541(a)(3) ensures that the estate will be the beneficiary of the trustee's efforts to recover property wrongfully withheld from the estate in various ways. Under § 550, the relevant section here, the trustee may recover preferences and fraudulent transfers from transferees.[16] The essence of the actions covered by § 550 is *avoidance*, not damages. But the Independent Trustees' RICO claims will not avoid preferences or fraudulent transfers (the First Amended Complaint asserts such claims separately); rather, they seek treble damages for the estate's deprivation of assets through the Hunts' and the defendants' RICO "enterprise."

The plain language of §§ 541 and 550 indicates that the only actions a trustee is authorized to bring are those which are property of the estate: (1) actions which the debtor could bring, and (2) avoidance actions for recovery of property or the value of property against third parties. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989) ("as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute").

### 4. The Independent Trustees' Status Under § 544

■ A trustee in bankruptcy steps into the shoes of a hypothetical contract claimant or a judgment creditor with an unsatisfied execution. 11 U.S.C. § 544. Such *actual* creditors could maintain RICO claims such as those at issue here to the extent they have suffered damages.[17] Such claims, however, would belong to those creditors individually and not to the bankruptcy estate. As discussed previously, "the trustee lacks standing to bring personal claims of creditors. The simple reason is that personal claims are not property of the estate." *In re E.F. Hutton Southwest*

---

tor could be brought by the trustee as a representative of all creditors." 831 F.2d at 1348–49, quoted in Plaintiffs' Consolidated Response Re Standing Issues 10. Despite this sweeping language, however, *Koch* is an alter ego case in which the debtor corporation was "not *in pari delicto* with the wrongdoers," 831 F.2d at 1352, and hence is not inconsistent with this Court's ruling. The same combination of overbroad, highly quotable language and distinguishable fact patterns characterizes *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983); *Carlton v. BAWW*, 751 F.2d 781 (5th Cir.1985); and *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir.1989).

**15.** The listed sections of the Bankruptcy Code pertain to the following matters:
§ 329(b): recovery of excessive compensation of debtor's attorney;
§ 363(n): damages related to improper sale of property of the estate;
§ 543: turnover of property by a custodian;
§ 550: liability of transferee of an avoided transfer;
§ 553: recovery of debt offset by creditor; and
§ 723: property recovered by partnership from general partners.
4 Collier on Bankruptcy ¶ 541.16, pp. 541–97 (1992).

**16.** 11 U.S.C. § 550(a):
> To the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

Section 550(c) states, "The trustee is entitled to only a single satisfaction under subsection (a) of this section." This general language implies that the trustee may be prohibited from recovery of treble damages. However, it is not necessary for this Court to reach a conclusion on this issue.

**17.** This conclusion is not inconsistent with *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989), which, as previously discussed, directs that, *where the RICO claim belongs to the estate*, "only the trustee in bankruptcy has standing to bring a RICO claim for monies owed to the bankruptcy estate." 868 F.2d at 746.

**104**

*Properties,* 103 B.R. at 812, citing *Caplin* and *Koch Refining.*

Most importantly, Congress has declined an invitation to add language to § 544 that would accomplish the very result sought by the Independent Trustees. The Court of Appeals for the Eighth Circuit described that invitation in *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222 (8th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987):

> In 1978, six years after *Caplin* was decided, Congress overhauled the bankruptcy laws when it enacted the Bankruptcy Code. As part of the revision, Congress consolidated former sections 70c and 70e of the Act ... into Sections 544(a) and (b) of the Code, respectively, which apply to both reorganization and liquidation trustees. Although Section 544 clarified and expanded the trustee's role with respect to creditors, in no way was it changed to authorize the trustee to bring suits on behalf of the estate's creditors against third parties. In fact, the legislative history suggests just the opposite.
>
> \* \* \* \* \* \*
>
> [W]e believe Congress' message is clear—*no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors.

*Ozark,* 816 F.2d at 1227–28 (footnotes omitted).

Finally, plaintiffs argue that, despite the language of the Bankruptcy Code, allowing them to bring RICO claims on behalf of all creditors is the answer to various policy concerns:

> The only way to ensure equitable distribution of the creditors' common interest in bankruptcy fraud-based RICO claims, is to hold that § 541 includes RICO claims.... If creditors are allowed to bring their own RICO claims it will not only interfere with the fraudulent conveyance claims brought by these plain-

tiffs but may result in "short changing" some of the creditors.

Plaintiffs' Consolidated Response Re Standing Issues 12–13. Whatever the merits of this logic, the Bankruptcy Code is clear. This Court will not enlarge the powers of the trustee beyond those deemed appropriate by Congress.

## CONCLUSION

A claim for damages to the estate is founded solely upon § 541(a)(1). A claim for property fraudulently or preferentially transferred is property of the estate by virtue of § 541(a)(3). The Independent Trustees' RICO claims, as discussed above, fit within neither category. The Independent Trustees are not authorized under the Bankruptcy Code to pursue RICO claims against third parties if those claims are not property of the estate. Nor do the Independent Trustees' claims fit within 11 U.S.C. § 544 (stepping into the shoes of an unsecured creditor with a contract claim or unsatisfied execution)—for § 550 limits the recovery thereunder to *avoidance.*

Based upon the foregoing findings and authorities, this Court concludes that it lacks jurisdiction over the Independent Trustees' RICO claims because the plaintiffs lack standing to assert those claims. Therefore, those claims urged under RICO in the Plaintiffs' First Amended Complaint should be dismissed.

The Clerk of the United States Bankruptcy Court shall be directed to unseal the record in this adversary proceeding. An order consistent with these findings shall be entered forthwith.